GUARANTEED SUBPOENA SERVICE, INC.   P.O. BOX 2248   UNION, NJ 07083   Phone: (800) 672-1952  Fax: (908) 688-0885   Info@served.com
Summons in a Civil Action                              www.served.com                                         Copyright © 2000

# Summons

**Attorney(s):** Dawn DiDonato Burke, Esquire
**Office Address:** 1212 Quarry Hill Court Yardley, Pennsylvania 19067
**Phone:** (215) 369-4464        **Fax:** (215) 369-4846
**Attorney(s) for:** Plaintiff, Wildwood Square, LLC

Wildwood Square, LLC

|                       |
|-----------------------|
|  **Plaintiff(s)  vs.** |

Vitaly Korchevsky

**Defendant(s)**

**Superior Court of New Jersey**

Chancery **Division**
Cape May **County**

**Docket/Case# TYPE**

**Summons in a Civil Action**

## From The State of New Jersey,

*To The Defendant(s) Named Above:*

   *The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.*
*The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney*
*must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed*
*above within 35 days from the date you received this summons, not counting the date you received it. (The address of each*
*deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer*
*of motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971 Trenton, NJ*
*08625-0971. A filing fee payable to the clerk of the Superior Court and a completed Case Information Statement (available*
*from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a*
*copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is*
*named above. A telephone call will not protect your rights; you must file and serve a written answer of motion (with fee of*
*$135.00 and completed Case Information Statement) if you want the court to hear your defense.*

   *If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for*
*the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your*
*money, wages or property to pay all or part of the judgment.*

   *If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these*
*offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to*
*an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.*

*Dated:___/___/_____*

Donald F. Phelan
Clerk of the Superior Court

*Name of Defendant to be Served:*
Vitaly Korchevsky

*Address of Defendants to be Served:*
1709 Slitting Mill Road Glen Mills PA



**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center
10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
1st Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Floor, Hall of Records
101 South Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
9 North Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Streets, P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office, Attn: Intake
1st Floor, Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House, 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08882
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street
P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
3rd Floor
1 Kennedy Square, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House, 71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1262
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Place, P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market Street
P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House, 413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

Dawn DiDonato-Burke
1212 Quarry Hill Court
Yardley, PA 19067
(215) 369-4424
Attorney for Plaintiffs

---

*Plaintiff(s)*

Wildwood Square, LLC.
A New Jersey Limited liability Company

vs.

Vitaly Korchevsky
*Defendant(s)*

---

SUPERIOR COURT OF NEW JERSEY

CHANCERY DIVISION
CAPE MAY COUNTY
DOCKET NO.

CIVIL ACTION

**COMPLAINT**

The Plaintiff, Wildwood Square, LLC., a New Jersey limited liability company, whose primary place of business is 434 East 2nd Street North Wildwood, County of Cape May and State of New Jersey, by and through its member, Thomas J. DiDonato, by way of complaint against the defendant says:

1.    On or about October 8, 2005, the Defendant, Vitaly Korchevsky, whose address is 1709 Slitting Mill Road Glen Mills, PA, entered into an agreement of sale to purchase four out of 58 units from the Plaintiff, Wildwood Square, LLC. in the development known as Wildwood Square, which is located at Park Boulevard and Oak Avenues in the City of Wildwood, State of New Jersey and County of Cape May.

2.    The defendant, Vitaly Korchevsky, did enter into a contract in which Defendant Vitaly Korchevsky agreed to purchase and Plaintiff agreed to build Condominium Unit number 28 in the Wildwood Square Condominium Development for the purchase price of $369,000.00. Settlement was to occur on or before December 31, 2006. (A copy of said contract is attached

hereto as Exhibit A)

3. The defendant, Vitaly Korchevsky, did enter in to a contract with the Plaintiff in which the defendant agreed to purchase and Plaintiff agreed to build Condominium unit number 23 in the Wildwood Square Condominium Development. The agreed upon purchase price was for the amount of $369,000.00 with closing to occur on or before December 31, 2006. (A copy of said agreement of sale is attached hereto as Exhibit B).

4. The Defendant, Vitaly Korchevsky, did enter into a contract with the Plaintiff in which the Defendant, Vitaly Korchevsky agreed to purchase and Plaintiff agreed to build Condominium Unit number 22 in the Wildwood Square Condominium Development for the purchase price of $369,000.00 with settlement to occur or before December 31, 2006. (A copy of said agreement of sale is attached hereto as Exhibit C).

5. The Defendant, Vitaly Korchevsky, did enter into a contract with the Plaintiff in which he, Vitaly Korchevsky agreed to purchase and plaintiff, Wildwood Square Development Corp., agreed to build Condominium Unit number 17 in the Wildwood Square Condominium Development. The agreed upon purchase price is $369,000.00 with settlement to occur on or before December 31, 2006. (A copy of said agreement of sale is attached hereto as Exhibit D).

6. The defendant, Vitaly Korchevsky, pursuant to notification from Michael Power, real estate broker, did choose his selections of floorings, window coverings and appliances for said condominium units 17, 28, 23, and 22 on or about May 15, 2006. (See copy of choices signed by Defendant and attached hereto as Exhibit E). As such, said selections have been installed in all of the units which Mr. Korchevsky contracted to purchase from the Plaintiff, Wildwood Square, LLC.

7. A letter was sent to the defendant on September 16, 2006, informing him that his units

were approaching completion.

8. The defendant, Vitaly Korchevsky, pursuant to Section 34E of the Agreements of Sale, was given a Notice of settlement on or about November 1, 2006 to settle said units on December 8, 2006 at 12 noon, 1 p.m. 2 p.m. and 3 p.m. respectively. (See copy of letter attached hereto as Exhibit F)

9. Plaintiff has duly performed all the conditions and covenants specified in the contract that were to be performed by him.

10. Defendant has not performed and has refused and still refuses to purchase said condominium units as specified in the contract.

11. Plaintiff was informed that the defendant Vitaly Korchevsky would not be appearing at said closing via letter dated November 21, 2006, on behalf of the defendant, by and through his attorney at the time, Barry S. Goodman, Esquire.

10. Defendant is experienced in the real estate business and has purchased real estate as an investment in the Wildwood area in the past.

11. The defendant averred that he was purchasing these units as an investment.

12. By refusing to settle on the units as agreed, the defendant has defaulted on the agreements of sale for units 17, 22, 23 and 28.

13. The defendant is in breach of contract.

14. Plaintiff has no plain, speedy and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for specific performance would be in that the Plaintiff relied on the contracts entered into by defendant to obtain a bank loan, (as defendant agreed in Paragraph 12 of the Agreement of Sale attached hereto), the bank relied on the contracts to award the loan, the principle and interest remain on the bank loan and

the Plaintiff cannot be made whole without the specific performance of these contracts. The

defendant forfeiting the deposit monies in the amount of $ $73,800.00 is a wholly inadequate

remedy.

15. The contract is fair and equitable and is supported by adequate consideration.

16. Specific performance would be fair and equitable and would not be unduly harsh on

the defendant; however now awarding specific performance would be unduly harsh on the

Plaintiff.

WHEREFORE, PLAINTIFF requests judgment

1.        that the  defendant be decreed specifically to purchase condominium units 17,

           22, 23 and 28 in the Wildwood Square Condominium for the total amount of

           ($1,476,000.00) One million four hundred seventy six thousand  dollars

           immediately,

2.        for the costs of suit incurred herein,

3.        for interest lost.

4.        for principle and interest on the loan  at the rate of 8.5% per month from

           December 31, 2006

5.        for Reasonable attorney fees

6.        and for such other and further relief as the court deems proper.


COUNT II


17. Plaintiff repeats and realleges paragraphs 1 thru 16 of the complaint as if set forth in full

herein.

18. Between on or about October 8, 2005 and on or about December 1, 2006, plaintiff performed certain work, labor and services for the defendant, at the defendant's request. Specifically, Plaintiff erected condominium unit 17, for the agreed upon price and total value of Three hundred Sixty nine thousand dollars ($369,000.00).

19. . Between on or about October 8, 2005 and on or about December 1, 2006, plaintiff performed certain work, labor and services for the defendant, at the defendant's request. Specifically, Plaintiff erected condominium unit 22, for the agreed upon price and total value of three hundred sixty nine thousand dollars ($369,000.00).

20. Between on or about October 5, 2005 and on or about December 1, 2006, plaintiff performed certain work, labor and services for the defendant, at the defendant's request. Specifically, Plaintiff erected condominium unit 23,  for the agreed upon price and total value of Three Hundred sixty nine thousand dollars ($369,000.00)

21. Between on or about October 5, 2005 and on or about December 1, 2006, plaintiff performed certain work, labor and services for the defendant, at the defendant's request. Specifically, Plaintiff erected condominium unit 28, for the agreed upon price and total value of ($369,000.00) Three hundred sixty nine thousand dollars.

22. Plaintiff has duly performed all the conditions of the contract on plaintiff's part to be performed.

23. Demand has been made for the Defendant to purchase said units, as agreed, but the Defendant refuses and there is now due and owing from the defendant to the plaintiff the sum of One Million four hundred seventy six Thousand Dollars $1,476,000.00  with interest from December 31, 2006.

24. Defendant has breached the contract between the parties by reason of the defendant's failure to complete the contractual agreement by purchasing units 17, 22, 23 and 28 in the Wildwood Square Condominium.

25. As a result of Defendant's breach, plaintiff has been greatly damaged by the failure of the Defendant to fully perform the contract

WHEREFORE, Plaintiff demands judgment against the defendant:

    a. In the sum of One Million Four hundred seventy six Thousand Dollars ($1,476,000.00) with interest thereon from December 31, 2006, as well as an additional $100.00 per day from December 31, 2006 thru the date of execution of judgment.

    b. For punitive damages

    c. For reasonable attorney fees

    d. For Costs of suit incurred herein

    e. For interest at the rate of 8.5% per month from December 31, 2006 and after; and

    f. For such other and further relief as the court may deem just and proper.

## COUNT III

26. Plaintiff repeats and realleges paragraphs 1 thru 25 as if set forth in full herein.

27. In reliance on Defendant's Agreement, as well as other Agreements of Sale, Plaintiff has borrowed a total amount of $15,000,000.00.

28. Plaintiff pays a monthly interest payment in the amount of approximately $66,000.00.

29. As a result of Defendant's actions, Plaintiff's loan is unable to be reduced by One Million

Four Hundred Seventy Six Thousand Dollars.

30. Plaintiff is further damaged by the fact that the interest is not reduced as the loan has not

been reduced.

31. As a result of the Defendant's actions, Plaintiff is continually incurring additional fees

such as real estate taxes, condominium fees, and utility bills.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT AS FOLLOWS:

    a.  in the sum of One Million four hundred seventy six Thousand Dollars

        ($1,476,000.00) with interest thereon from December 31, 2006, as well as an

        additional $100.00 per day from December 31, 2006 thru the date of execution of

        judgment;

    b.  For punitive damages;

    c.  For reasonable attorney fees;

    d.  For Costs of suit incurred herein;

    e.  For interest at the rate of 8.5% per month from December 31, 2006 and after;

    f.  For compensatory damages;

    g.  For such other and further relief as the court may deem just and proper.


Date:  2/16/07            _Dawn di Burke_

                            Dawn DiDonato-Burke,

                            Attorney for Wildwood Square, LLC


**CERTIFICATION**

I certify that the foregoing statements made by me are true and correct to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 2/16/07

_____
Dawn DiDonato-Burke

## NOTICE PURSUANT TO RULES 1:5-1(a) and 4:17-4(c)

TAKE NOTICE that the undersigned attorney, counsel for the Plaintiff does hereby demand pursuant to Rules 1:5-1(a) and 4:17-4(c) that each party herein serving pleadings and Interrogatories and receiving Answers thereto serve copies of all such pleadings and Answers to Interrogatories received from any party upon the undersigned attorney and take notice that this is a continuing demand.

Date: 2/16/07

_____
Dawn DiDonato Burke, Esquire

## NOTICE OF OTHER ACTIONS

Pursuant to the provisions of Rule 4:5-1, I hereby certify the matter in controversy is not subject to other actions pending. I am not presently aware of the identity of any other parties who shall be joined in this action.

Date: 2/16/07

_____
Dawn DiDonato Burke, Esquire

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Dawn DiDonato-Burke, Esquire is hereby designated as trial counsel for Plaintiffs Wildwood Square, LLC.

February 15, 2006

_____
Dawn DiDonato-Burke

*Revised 9/12/2005*

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of October, 2005;

BETWEEN: WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER";

AND:  Vitaly Korchevsky, 1709 Slitting Mill Rd., Glen Mills, PA 19342, referred to as "BUYER".
   *The words Seller and Buyer include all Sellers and Buyers listed above;*

1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-1, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3. DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4. PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 28 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in the Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

| A. | Initial deposit to be paid on account upon signing the contract | $1,000.00 |
| B. | Deposit paid upon execution of this Agreement to be held by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy Savings Bank, located at 2628 Dune Drive, Avalon, New Jersey 08202 | $17,450.00 |
| C. | Balance due at closing, subject to adjustments and closing costs | $350,550.00 |

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. TITLE. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium;

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. DEFAULT BY SELLER. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. DEFAULT BY BUYER. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. RISK OF LOSS. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B. Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.    Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER. Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17. ASSIGNMENT AND RECORDATION. BUYER may not assign this Agreement or record or lodge same for public record. Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18. WARRANTIES. The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer. SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein. SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto. SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available. In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities. During such two (2) year period SELLER

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19.  LANDSCAPING.  No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20.  DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

7

survey.  BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.  COMPLETION.  The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.  The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.  If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.  The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.  SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.  CONSTRUCTION AND CHANGES.  SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.  The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit.  SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).  All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale.  Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller.  Said payments shall be non-refundable except in the event of default by the Seller.  Seller may, at Seller's option, elect to have payments made after work is done.

23.     COLOR SELECTIONS, EXTRAS AND OPTIONS.  All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.      If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

26.     NOTICES. All notices under this Agreement must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney. All notices to SELLER should be forwarded to the address provided for the SELLER.

27. ENTIRE AGREEMENT. This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28. BINDING EFFECT. This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29. EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS. Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER. Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: Appliances included in sale are as follows:

                a. Refrigerator (Model# 1GTS18DCPRCC)
                b. Range (Model# JGBP33CEHCC)
                c. Under Counter Dishwasher (Model# GSD2000JCC)
                d. Microwave Oven (Model# JVM12631CJ)

32. RECEIPT OF DOCUMENTS. By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS: Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

    **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

    **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

    **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

    **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

    **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED.  SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY.  NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____ 10/22/05
Thomas DiDonato, Member

_Vitaly Korchevsky_ _____ 10/22/05
Buyer

_____
Buyer

12

*Revised 9/12/2005*

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of October, 2005;

BETWEEN: WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER";

AND:   Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills, PA 19342, referred to as "BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above.*

1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-1, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3. DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4. PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 23 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in the Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

| | | | |
|---|---|---|---|
| A. | Initial deposit to be paid on account upon signing the contract | | $1,000.00 |
| B. | Deposit paid upon execution of this Agreement to be held by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy Savings Bank, located at 2628 Dune Drive, Avalon, New Jersey 08202 | | $17,450.00 |
| C. | Balance due at closing, subject to adjustments and closing costs | | $350,550.00 |

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. <u>TITLE</u>. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. <u>DEFAULT BY SELLER</u>. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. <u>DEFAULT BY BUYER</u>. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. <u>RISK OF LOSS</u>. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B. Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.    Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER. Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.  ASSIGNMENT AND RECORDATION.  BUYER may not assign this Agreement or record or lodge same for public record. Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  WARRANTIES.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.  SELLER'S sole responsibility shall be limited to the Terms and conditions set forth therein. SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto. SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available. In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities. During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19. LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20. DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.   COMPLETION.   The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.   The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.  If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.  The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.  SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.   CONSTRUCTION AND CHANGES.   SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.  The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit. SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).  All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale. Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.       COLOR SELECTIONS, EXTRAS AND OPTIONS.    All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,.

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.      If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

9

26. NOTICES. All notices under this Agreement must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney. All notices to SELLER should be forwarded to the address provided for the SELLER.

27. ENTIRE AGREEMENT. This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28. BINDING EFFECT. This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29. EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS. Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER. Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: Appliances included in sale are as follows:

      a. Refrigerator (Model# 1GTS18DCPRCC)
      b. Range (Model# JGBP33CEHCC)
      c. Under Counter Dishwasher (Model# GSD2000JCC)
      d. Microwave Oven (Model# JVM12631CJ)

32. RECEIPT OF DOCUMENTS. By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS: Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

    **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

    **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

    **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

    **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

    **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS. WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____  10/22/05
Thomas DiDonato, Member

_Vitaly Korchevsky_ _____  10/22/05
Buyer

_____
Buyer

12

Revised 9/12/2005

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of October, 2005;

BETWEEN: WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER";

AND:   Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills, PA 19342, referred to as "BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. <u>WILDOOD SQUARE CONDOMINIUMS</u>: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. <u>SUBMISSION OF CONDOMINIUM</u>. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-1, et seq.; which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3. <u>DELIVERY OF DOCUMENTS</u>: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4. <u>PURCHASE AGREEMENT</u>. BUYER agrees to buy and Seller agrees to sell Condominium Unit # <u>22</u> in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided <u>1.77966%</u> interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in the Master Deed and also in the Unit Deed.

5. <u>PAYMENT OF PURCHASE PRICE</u>:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

| | | | |
|---|---|---|---|
| A. | Initial deposit to be paid on account upon signing the contract | | $1,000.00 |
| B. | Deposit paid upon execution of this Agreement to be held by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy Savings Bank, located at 2628 Dune Drive, Avalon, New Jersey 08202 | | $17,450.00 |
| C. | Balance due at closing, subject to adjustments and closing costs | | |
| | | | $350,550.00 |

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. <u>MORTGAGE FINANCING CONTINGENCY</u>: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

Case 1:33-cv-00001   Document 838-4   Filed 04/10/2007   Page 38 of 94

10. TITLE. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium;

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. DEFAULT BY SELLER. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. DEFAULT BY BUYER. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. RISK OF LOSS. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

Case 3:03-cv-00001   Document 838-4   Filed 04/10/2007   Page 9 of 30

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

Case 1:08-cv-00094 Document 038 Filed 04/10/2007 Page 18 of 30

as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

        C.      Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER. Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.   ASSIGNMENT AND RECORDATION. BUYER may not assign this Agreement or record or lodge same for public record. Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  WARRANTIES. The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer. SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein. SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto. SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available. In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities. During such two (2) year period SELLER

warrants that the common facilities are fit for their intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19.  LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20.  DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

7

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.   COMPLETION.  The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.  The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.  If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.  The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.  SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.   CONSTRUCTION AND CHANGES.  SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.  The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit.  SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).  All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale.  Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller.  Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.   COLOR SELECTIONS, EXTRAS AND OPTIONS.  All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

Case 1:05-cv-05604   Document 838-4   Filed 04/10/2007   Page 13 of 30

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.    If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections an behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing. ·In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein. — ——— —   ——

25.     STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect .

26.   Case NOTICES. Documents delivered or mailed or notices required to be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney. All notices to SELLER should be forwarded to the address provided for the SELLER.

27. ENTIRE AGREEMENT. This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28. BINDING EFFECT. This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29. EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS. Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER. Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: Appliances included in sale are as follows:

     a. Refrigerator (Model# 1GTS18DCPRCC)
     b. Range (Model# JGBP33CEHCC)
     c. Under Counter Dishwasher (Model# GSD2000JCC)
     d. Microwave Oven (Model# JVM12631CJ)

32. RECEIPT OF DOCUMENTS. By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS: Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

**34. ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

   **A.** STUDY BY ATTORNEY:  Buyer and Seller may choose to have an attorney study this contract.  If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period.  This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

   **B.** COUNTING THE TIME:  you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller.  You do not count Saturdays, Sundays or legal holidays.  The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

   **C.** NOTICE OF DISAPPROVAL:  If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written.  The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person.  Telegram or certified letter will be effective upon sending.  The personal delivery will be effective upon delivery.  The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

   **D.**  This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

   **E.** NOTIFICATION OF SETTLEMENT:  Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification.  Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day  period until the date of settlement.

11

35. BUYER'S RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED.  SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY.  NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____  10/22/05
Thomas DiDonato, Member

_____  10/22/05
Buyer

_____
Buyer

12

*Revised 9/12/2005*

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of October, 2005;

BETWEEN: WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER";

AND:   Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills, PA 19342, referred to as "BUYER".

*The words Seller and Buyer include all Sellers and Buyers listed above.*

1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-1, et seq, which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3. DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4. PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 17 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in the Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.     Initial deposit to be paid on account upon signing the contract     $1,000.00

B.     Deposit paid upon execution of this Agreement to be held by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy Savings Bank, located at 2628 Dune Drive, Avalon, New Jersey 08202     $17,450.00

C.     Balance due at closing, subject to adjustments and closing costs

              $350,550.00

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. TITLE. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium.

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. DEFAULT BY SELLER. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. DEFAULT BY BUYER. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. RISK OF LOSS. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION:  The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS:  The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16.  RIGHTS RESERVED TO SELLERS.  SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.   Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER. Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.   **ASSIGNMENT AND RECORDATION.** BUYER may not assign this Agreement or record or lodge same for public record. Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.   **WARRANTIES.** The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer. SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein. SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto. SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available. In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities. During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19.  LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20.  DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.  COMPLETION.  The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.  The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.  If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.  The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.  SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.  CONSTRUCTION AND CHANGES.  SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.  The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit.  SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).  All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale.  Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.  COLOR SELECTIONS, EXTRAS AND OPTIONS.  All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.      If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing. In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION: Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

9

26.    NOTICES. All notices under this Agreement must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney. All notices to SELLER should be forwarded to the address provided for the SELLER.

27. ENTIRE AGREEMENT. This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28. BINDING EFFECT. This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29. EFFECT OF MASTER DEED. BY-LAWS, RULES AND REGULATIONS. IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS. Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER. Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: Appliances included in sale are as follows:

    a. Refrigerator (Model# IGTS18DCPRCC)
    b. Range (Model# JGBP33CEHCC)
    c. Under Counter Dishwasher (Model# GSD2000JCC)
    d. Microwave Oven (Model# JVM1263ICJ)

32. RECEIPT OF DOCUMENTS. By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS: Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the ............

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

**34. ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

   **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

   **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

   **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

   **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

   **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____
    Thomas DiDonato, Member

*Vitaly Korchevsky*
    Buyer

_____
    Buyer

12

# Wildwood Square Condominiums

## Unit#: 17

**Kitchen Counter Tops:**

     ☒ Standard   # *4551-01 Black Star Granite*

     ☐ Corian   #_____ ($3,430.00) (please make your check payable to "Direct Cabinet Sales")

     ☐ Granite   #_____ ($4,300.00) (please make your check payable to "Direct Cabinet Sales")

**Kitchen Cabinets:** *Maple, Light* ($500.00 extra if "Bisque" or "Carmine" is selected)
(please make your check payable to "Direct Cabinet Sales")

**Vanities:**    ☐ White
          ☒ Same as Kitchen

**Vanity Tops:** *102 Buge Vein White* (ONLY cultured marble is available)

**Carpet selected (same throughout)*:**

     ☐ Plush_____ (Extra charges apply for colors other than beige)*

     ☒ Berber   *Doeslin*

**Vinyl for kitchen and bathrooms*:** *02070 Multi Bleached Clay*

*Tile and hardwood flooring are available at extra cost. Please contact Ed Sweeney of FLŌRZ at (856)-467-0079 for pricing information.

X_____
Vitaly Korchevsky

# Wildwood Square Condominiums

## Unit#: 22

**Kitchen Counter Tops:**

☑ Standard    # *4551-01 Black Star Granite*

☐ Corian    #_____ ($3,430.00) (please make your check payable to "Direct Cabinet Sales")

☐ Granite    #_____ ($4,300.00) (please make your check payable to "Direct Cabinet Sales")

**Kitchen Cabinets:** *Maple, Light* ($500.00 extra if "Bisque" or "Carmine" is selected)
(please make your check payable to "Direct Cabinet Sales")

**Vanities:**    ☐ White
☑ Same as Kitchen

**Vanity Tops:** *102 Beige Vein White* (ONLY cultured marble is available)

**Carpet selected (same throughout)\*:**

☐ Plush_____ (Extra charges apply for colors other than beige)\*

☑ Berber *Doeskin*

**Vinyl for kitchen and bathrooms\*:** *02070 Multi Bleached Clay*

\*Tile and hardwood flooring are available at extra cost. Please contact Ed Sweeney of FLÕRZ at (856)-467-0079 for pricing information.

X_____
Vitaly Korchevsky

# Wildwood Square Condominiums

## Unit#: 23

**Kitchen Counter Tops:**

    ☒ Standard   # *4551-01 Black Star Granite*

    ☐ Corian    #_____ ($3,430.00) (please make your check payable to "Direct Cabinet Sales")

    ☐ Granite   #_____ ($4,300.00) (please make your check payable to "Direct Cabinet Sales")

**Kitchen Cabinets:** *Maple, Light*  ($500.00 extra if "Bisque" or "Carmine" is selected)
       (please make your check payable to "Direct Cabinet Sales")

**Vanities:**  ☐ White
        ☒ Same as Kitchen

**Vanity Tops:** *102 Beige Vein White* (ONLY cultured marble is available)

**Carpet selected** (same throughout)*:

    ☐ Plush_____ (Extra charges apply for colors other than beige)*

    ☒ Berber  *Doeskin*

**Vinyl for kitchen and bathrooms*:** *02070 Multi Bleached Clay*

*Tile and hardwood flooring are available at extra cost. Please contact Ed Sweeney of FLŌRZ at (856)-467-0079for pricing information.

X_____
Vitaly Korchevsky

# Wildwood Square Condominiums

## Unit#: 28

**Kitchen Counter Tops:**

    ☒ Standard   # *4551- 01 Black Star Granite*

    ☐ Corian   #_____   ($3,430.00) (please make your check payable to "Direct Cabinet Sales")

    ☐ Granite   #_____   ($4,300.00) (please make your check payable to "Direct Cabinet Sales")

**Kitchen Cabinets:** *Maple, Light*   ($500.00 extra if "Bisque" or "Carmine" is selected)
                                             (please make your check payable to "Direct Cabinet Sales")

**Vanities:**   ☐ White
             ☒ Same as Kitchen

**Vanity Tops:** *02 Beige Vein white*   (ONLY cultured marble is available)

**Carpet selected (same throughout)*:**

    ☐ Plush_____   (Extra charges apply for colors other than beige)*

    ☒ Berber   *Destin*

**Vinyl for kitchen and bathrooms*:** *02070 Multi Bleached Clay*

*Tile and hardwood flooring are available at extra cost. Please contact Ed Sweeney of FLŌRZ at (856)-467-0079for pricing information.

X_____
Vitaly Korchevsky

# Wildwood Square Condominiums

## Appliance Selection Sheet
## For
## Vitaly Korchevsky
## Unit# 28

Please check the box next to the color of the appliances that you prefer. If you would like to have a washer and dryer put into your unit, please check the corresponding box below.

☒ White

☐ Bisque

☐ Stainless Steel ($500.00 Extra)

☐ Washer & Dryer ($500.00 Extra)

_____      _____ (Date)
Vitaly Korchevsky

# Wildwood Square Condominiums

### Appliance Selection Sheet
### For
### Vitaly Korchevsky
### Unit# 22

Please check the box next to the color of the appliances that you prefer. If you would like
to have a washer and dryer put into your unit, please check the corresponding box below.

☒ White

☐ Bisque

☐ Stainless Steel ($500.00 Extra)

☐ Washer & Dryer ($500.00 Extra)

_____        _____ **(Date)**

Vitaly Korchevsky

# Wildwood Square Condominiums

## Appliance Selection Sheet
## For
## Vitaly Korchevsky
## Unit# 17

Please check the box next to the color of the appliances that you prefer. If you would like to have a washer and dryer put into your unit, please check the corresponding box below.

☒ White

☐ Bisque

☐ Stainless Steel ($500.00 Extra)

☐ Washer & Dryer ($500.00 Extra)

_____     _____ (Date)
Vitaly Korchevsky

# Wildwood Square Condominiums

### Appliance Selection Sheet
### For
### Vitaly Korchevsky
### Unit# 23

Please check the box next to the color of the appliances that you prefer. If you would like
to have a washer and dryer put into your unit, please check the corresponding box below.

☒ White

☐ Bisque

☐ Stainless Steel ($500.00 Extra)

☐ Washer & Dryer ($500.00 Extra)

_____        _____ (Date)
Vitaly Korchevsky

rom:      Michael C Powers
ent:      Wednesday, May 03, 2006 12:59 PM
o:        'vkorchevsky@hotmail.com'
ubject:   Wildwood Square
ttachments: V Korchevsky Selection Sheets.pdf; V Korchevsky Appliance Selection Sheets.pdf

ne: 609-408-4150
: 800-806-1481
il: michael@michaelcpowers.com
site: www.michaelcpowers.com

                                                           Re/Max Avalon-Stone Harbor

n The Desk Of
1ael C. Powers, CRB

y:

can make your selections at Coldwell Banker office in Philadelphia (7 N Columbus Blvd, Philadelphia, PA 19106); they have
ame set of samples as we do. However you would have to make and appointment with them first to make sure someone is
able to help you or answer your questions.
contact person there is Christine ((215) 351-7437); please bring your selection sheets with you (file is attached). When
ction sheets are filled out, please mail them to our Avalon office:

lax Avalon-Stone Harbor
 Nia Coombs
 Dune Dr
2n, NJ 08202

lso attaching your Appliance Selection Sheets. There are no samples to look at for that, so you can just fill them out and
1 to us.

1er option would be for you to come to our Avalon office around May 15th, since we are here 7 days a week, and make all
tions here. That way I can make sure you get all current information on your options.

e I didn't confuse you with this email. Please call me any time if you have any questions.

rsly,


:oombs
utive Director of Operations
'ax Avalon-Stone Harbor
e: 609 967 4800 x29
300 806 1481
iel@michaelcpowers.com

us found in this outgoing message.
ed by AVG Free Edition.
n: 7.1.385 / Virus Database: 268.5.1/328 - Release Date: 5/1/2006

006

From:   Vitaly Korchevsky (vkorchevsky@hotmail.com)
Sent:   Tuesday, May 16, 2006 10:54 AM
To:     Michael C Powers
Subject: RE: Wildwood Square

---

From: "Michael C Powers" <michael@michaelcpowers.com>
To: "Vitaly Korchevsky" <vkorchevsky@hotmail.com>
Subject: RE: Wildwood Square
Date: Tue, 16 May 2006 10:20:52 -0400

Vitaly:

Would you like to include washer and dryer? They are $500 per unit.

Please let me know.

Thank you,

Michael

---

From: Vitaly Korchevsky [mailto:vkorchevsky@hotmail.com]
Sent: Monday, May 15, 2006 9:45 AM
To: Michael C Powers
Subject: RE: Wildwood Square

Good morning Michael.

Just make everything standard in all four units.

X

Vitaly

---

From: "Michael C Powers" <michael@michaelcpowers.com>
To: <vkorchevsky@hotmail.com>
Subject: Wildwood Square
Date: Wed, 3 May 2006 12:58:41 -0400

Phone: 609-408-4150
Fax: 800-806-1481
Email: michael@michaelcpowers.com
Website: www.michaelcpowers.com

Re/Max Avalon-Stone Har

From The Desk Of
Michael C. Powers, CRB

Vitaly:

You can make your selections at Coldwell Banker office in Philadelphia (7 N Columbus Blvd, Philadelphia, PA 19106); they have the same set of samples as we do. However you would have to make and appointment with them first to make sure someone is available to help you or answer your questions.
The contact person there is Christine ((215) 351-7437); please bring your selection sheets with you (file is attached). **When**

5/2006

I'm also attaching your Appliance Selection Sheets. There are no samples to look at for that, so you can just fill them out and return to us.

Another option would be for you to come to our Avalon office around May 15th, since we are here 7 days a week, and make all selections here. That way I can make sure you get all current information on your options.

I hope I didn't confuse you with this email. Please call me any time if you have any questions.

Sincerely,

Nia

Nia Coombs
Executive Director of Operations
Re/Max Avalon-Stone Harbor
Phone: 609 967 4800 x29
Fax: 800 806 1481
michael@michaelcpowers.com

--
No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.1.385 / Virus Database: 268.5.1/328 - Release Date: 5/1/2006

> << VKorchevskySelectionSheets.pdf >>

> << VKorchevskyApplianceSelectionSheets.pdf >>

et MSN Messenger with FREE Video Conversation - the next best thing to being there!

virus found in this incoming message.
ecked by AVG Free Edition.
rsion: 7.1.392 / Virus Database: 268.5.6/339 - Release Date: 5/14/2006

virus found in this outgoing message.
ecked by AVG Free Edition.
rsion: 7.1.392 / Virus Database: 268.5.6/340 - Release Date: 5/15/2006

the new Messenger beta now

5/2006

**SEABOARD TITLE AGENCY**
2761 DUNE DRIVE
AVALON, NEW JERSEY 08202
DIAL (609) 967-1377
FAX (609) 967-1378

November 1, 2006

Mr. Vitaly Korchevsky
1709 Slitting Mill Road
Glen Mills, Pennsylvania 19342

RE:    sb14940
       Wildwood Square, LLC, a New Jersey Limited Liability Company to Korchevsky
       3401 Park Blvd. Unit 17
       Wildwood, New Jersey 08260

Dear Mr. Korchevsky

We have been asked to conduct a closing on the above-mentioned premises. Settlement is scheduled to take place on December 8, 2006 at 1:00 p.m. in our Avalon offices.

We will forward a copy of a preliminary settlement sheet for your review prior to closing. Please feel free to contact me with any questions.

Very truly yours,


Nicole Quinn


cc:    Wildwood Square, LLC, a New Jersey Limited Liability Company
       REMAX Avalon/Stone Harbor/Michael Powers .
       TBD

*Old # ?*

**RE/MAX**
*Renowned Properties®*

September 9, 2005


Vitaly Korchevsky
1709 Slitting Mill Rd
Glen Mills PA 19342

RE:    Wildwood Square Condominiums Unit# 14
       Wildwood, NJ 08260

Dear Vitaly:

It is with great pleasure that I'm forwarding to you the Agreements of Sale along with
Condominium Documents for the new construction at Wildwood Square.

Please review all the documents and return one copy of the Agreement of Sale with your deposit
check in the amount of $35,900.00 made payable to Re/Max Avalon-Stone Harbor on or before
September 30, 2005. Any questions concerning any of the provided information can be directed
to me at any time.

Once all the agreements are received, we will process them and contact you to make selections
for cabinets, carpets, tile, and/or any other amenities.

I am looking forward to enjoying this exciting opportunity provided to us by Wildwood Square
Condominiums!

Sincerely,

Michael C. Powers, CRB
Broker Associate



CC:    DiDonato Construction
Enc.:  Agreement of Sale (2 copies)
       Condominium Documents



Michael C Powers, CRB
30 Years Experience
#1 RE/MAX in New Jersey 2004
RE/MAX Avalon-Stone Harbor
2109 Dune Drive • Avalon, New Jersey 08202 • Direct: (609) 408-4150 • Fax: (800) 806-1481
Office: (609) 967-4800 • E-Mail: michael@michaelcpowers.com
Each Office Independently Owned and Operated




# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:        WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "'BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDWOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.      DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.      PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 14 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.      Initial deposit paid on account                                    $1,000.00


B.      Deposit paid upon execution of this Agreement to be held
        by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy
        Savings Bank, located at 2628 Dune Drive,
        Avalon, New Jersey 08202                              $35,900.00

C.      Balance due at closing, subject to adjustments and closing costs

                                                             $332,100.00



All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.



6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. <u>TITLE</u>. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium.

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. <u>DEFAULT BY SELLER</u>. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. <u>DEFAULT BY BUYER</u>. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. <u>RISK OF LOSS</u>. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification.   Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS:  The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER.  This paragraph shall survive delivery of the deed and shall not merge therein.  Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16.. RIGHTS RESERVED TO SELLERS.   SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B.  Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.      Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER.  Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.   ASSIGNMENT AND RECORDATION.  BUYER may not assign this Agreement or record or lodge same for public record.  Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  WARRANTIES.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.  SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein.  SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto.  SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available.  In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities.  During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19. LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20. DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

7

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21. COMPLETION. The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction. The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title. If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing. The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed. SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22. CONSTRUCTION AND CHANGES. SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect. The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit. SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model). All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale. Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23. COLOR SELECTIONS, EXTRAS AND OPTIONS. All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.    If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections an behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

26.    NOTICES.  All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney.  All notices to SELLER should be forwarded to the address provided for the SELLER.

27.  ENTIRE AGREEMENT.  This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT.  This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30.  MUNICIPAL ASSESSMENTS.  Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER.  Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31.  FURNITURE AND APPLIANCES:  NONE

32.  RECEIPT OF DOCUMENTS.  By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33.  NOTICE OF OFF- SITE CONDITIONS:  Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition.  Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

    **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

    **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

    **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

    **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

    **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT:  NOTICE TO THE BUYER:  YOU HAVE
THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR
DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS
ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE
DAY ON WHICH THIS AGREEMENT WAS EXECUTED.  SUCH CANCELLATION IS
WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN
THEIR ENTIRETY.  NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434
EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day
and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

WILDWOOD SQUARE, LLC.
Seller

By: _____

_____     Thomas DiDonato, Member

WITNESS:

_____

_____                            Buyer

WITNESS:

_____

_____                            Buyer

12

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:          WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDWOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.      DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.      PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 14 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.   Initial deposit paid on account                                $1,000.00

B.   Deposit paid upon execution of this Agreement to be held
     by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy
     Savings Bank, located at 2628 Dune Drive,
     Avalon, New Jersey 08202                                       $35,900.00

C.   Balance due at closing, subject to adjustments and closing costs

                                                                    $332,100.00

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. <u>TITLE</u>. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. <u>DEFAULT BY SELLER</u>. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. <u>DEFAULT BY BUYER</u>. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. <u>RISK OF LOSS</u>. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B.  Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.      Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans.  This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER.  Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.  ASSIGNMENT AND RECORDATION.  BUYER may not assign this Agreement or record or lodge same for public record.  Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  WARRANTIES.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.  SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein.  SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto.  SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available.  In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement.  This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities.  During such two (2) year period SELLER

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19. LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises. The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20. DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey.  BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.  UNDERLINE COMPLETION.  The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.  The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.  If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.  The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.  SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.  CONSTRUCTION AND CHANGES.  SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.  The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit.  SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).  All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale.  Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller.  Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.      COLOR SELECTIONS, EXTRAS AND OPTIONS.  All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.      If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.          STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

9

26.     NOTICES. All notices under this Agreement must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney. All notices to SELLER should be forwarded to the address provided for the SELLER.

27. ENTIRE AGREEMENT. This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28. BINDING EFFECT. This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29. EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS. Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER. Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: NONE

32. RECEIPT OF DOCUMENTS. By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS: Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

    **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

    **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

    **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

    **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

    **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11