

**RE/MAX**
*Renowned Properties®*

*Old Apt #?*

September 9, 2005

Vitaly Korchevsky
1709 Slitting Mill Rd
Glen Mills PA 19342

RE:    Wildwood Square Condominiums Unit# 19
       Wildwood, NJ 08260

Dear Vitaly:

It is with great pleasure that I'm forwarding to you the Agreements of Sale along with Condominium Documents for the new construction at Wildwood Square.

Please review all the documents and return one copy of the Agreement of Sale with your deposit check in the amount of $35,900.00 made payable to Re/Max Avalon-Stone Harbor on or before September 30, 2005. Any questions concerning any of the provided information can be directed to me at any time.

Once all the agreements are received, we will process them and contact you to make selections for cabinets, carpets, tile, and/or any other amenities.

I am looking forward to enjoying this exciting opportunity provided to us by Wildwood Square Condominiums!

Sincerely,

Michael C. Powers, CRB
Broker Associate

CC:    DiDonato Construction
Enc.:  Agreement of Sale (2 copies)
       Condominium Documents



Michael C Powers, CRB
30 Years Experience
#1 RE/MAX in New Jersey 2004
RE/MAX Avalon-Stone Harbor
2109 Dune Drive • Avalon, New Jersey 08202 • Direct: (609) 408-4150 • Fax: (800) 806-1481
Office: (609) 967-4800 • E-Mail: michael@michaelcpowers.com
Each Office Independently Owned and Operated





# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:          WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "'BUYER".

*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-1, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.      DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.      PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 19 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.  Initial deposit paid on account                              $1,000.00


B.  Deposit paid upon execution of this Agreement to be held
    by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy
    Savings Bank, located at 2628 Dune Drive,
    Avalon, New Jersey 08202                                     $35,900.00

C.  Balance due at closing, subject to adjustments and closing costs

                                                                 $332,100.00


All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.


6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER mat SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by (he Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. TITLE. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. DEFAULT BY SELLER. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. DEFAULT BY BUYER. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. RISK OF LOSS. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16.. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B.  Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.      Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER.  Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.   <u>ASSIGNMENT AND RECORDATION</u>.  BUYER may not assign this Agreement or record or lodge same for public record.  Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.   <u>WARRANTIES</u>.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.  SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein.  SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto.  SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available.  In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement.  This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities.  During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19.  LANDSCAPING.  No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20.  DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.   COMPLETION.   The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.  The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.  If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.  The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.  SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22. CONSTRUCTION AND CHANGES.  SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.  The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit.  SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).  All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale.  Buyer shall pay for extras or changes; prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.        COLOR SELECTIONS, EXTRAS AND OPTIONS.   All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.     If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.  STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

26.      NOTICES.  All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney.  All notices to SELLER should be forwarded to the address provided for the SELLER.

27.  ENTIRE AGREEMENT.  This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT.  This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30.  MUNICIPAL ASSESSMENTS.  Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER.  Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31.  FURNITURE AND APPLIANCES:  NONE

32.  RECEIPT OF DOCUMENTS.  By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33.  NOTICE OF OFF- SITE CONDITIONS:  Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition.  Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW**: This Agreement of Sale has been prepared by a licensed New Jersey attorney.

    **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

    **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

    **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

    **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

    **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____
    Thomas DiDonato, Member


_____
                          Buyer


_____
                          Buyer

12

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:          WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as '"BUYER".
    *The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDWOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.      DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.      PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 19 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.  Initial deposit paid on account                                $1,000.00

B.  Deposit paid upon execution of this Agreement to be held
    by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy
    Savings Bank, located at 2628 Dune Drive,
    Avalon, New Jersey 08202                                       $35,900.00

C.  Balance due at closing, subject to adjustments and closing costs

                                                                   $332,100.00

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. TITLE. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B. Rights of adjoining owners and tenants in and to the Common Elements; ·

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. DEFAULT BY SELLER. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. DEFAULT BY BUYER. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are  ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit.  Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan.  BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. RISK OF LOSS. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing.  In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification.  Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION:  The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS:  The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER.  This paragraph shall survive delivery of the deed and shall not merge therein.  Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16..  RIGHTS RESERVED TO SELLERS.  SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement.  Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

5

B.  Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.    Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER.  Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.  ASSIGNMENT AND RECORDATION.  BUYER may not assign this Agreement or record or lodge same for public record.  Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  WARRANTIES.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.   SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein.  SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto.  SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available.  In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement.  This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities.  During such two (2) year period SELLER

6

.warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19.  LANDSCAPING.  No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20.  DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21. COMPLETION. The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction. The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title. If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing. The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed. SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22. CONSTRUCTION AND CHANGES. SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect. The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit. SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model). All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale. Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.     COLOR SELECTIONS, EXTRAS AND OPTIONS. All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.     If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24. <u>GENERAL PROVISIONS</u>.

A. SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing. In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B. The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C. The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25. STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

9

26.      NOTICES. All notices under this Agreement must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney. All notices to SELLER should be forwarded to the address provided for the SELLER.

27. ENTIRE AGREEMENT. This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT. This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS. Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER. Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: NONE

32. RECEIPT OF DOCUMENTS. By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS: Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

A. STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

B. COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

C. NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

D. This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

E. NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____
        Thomas DiDonato, Member

_____
                                        Buyer

_____
                                        Buyer

12



**RE/MAX**
*Renowned Properties®*

*Old unity?*

September 9, 2005

Vitaly Korchevsky
1709 Slitting Mill Rd
Glen Mills PA 19342

RE:      Wildwood Square Condominiums Unit# 25
         Wildwood, NJ 08260

Dear Vitaly:

It is with great pleasure that I'm forwarding to you the Agreements of Sale along with Condominium Documents for the new construction at Wildwood Square.

Please review all the documents and return one copy of the Agreement of Sale with your deposit check in the amount of $35,900.00 made payable to Re/Max Avalon-Stone Harbor on or before September 30, 2005. Any questions concerning any of the provided information can be directed to me at any time.

Once all the agreements are received, we will process them and contact you to make selections for cabinets, carpets, tile, and/or any other amenities.

I am looking forward to enjoying this exciting opportunity provided to us by Wildwood Square Condominiums!

Sincerely,

Michael C. Powers, CRB
Broker Associate

CC:     DiDonato Construction
Enc.:   Agreement of Sale (2 copies)
        Condominium Documents



Michael C Powers, CRB
30 Years Experience
#1 RE/MAX in New Jersey 2004
RE/MAX Avalon-Stone Harbor
2109 Dune Drive • Avalon, New Jersey 08202 • Direct: (609) 408-4150 • Fax: (800) 806-1481
Office: (609) 967-4800 • E-Mail: michael@michaelcpowers.com
Each Office Independently Owned and Operated







# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:        WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "'BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDWOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey, upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.        DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.        PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 25 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

1

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.    Initial deposit paid on account

$1,000.00

B.    Deposit paid upon execution of this Agreement to be held
by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy
Savings Bank, located at 2628 Dune Drive,
Avalon, New Jersey 08202

$35,900.00

C.    Balance due at closing, subject to adjustments and closing costs

$332,100.00

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. <u>CLOSING.</u>

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. <u>REAL ESTATE TAXES and WATER and SEWER CHARGES.</u> Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. <u>ADJUSTMENTS AND CLOSING.</u>

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10.  TITLE.  The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates.  SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A.  Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B.  Rights of adjoining owners and tenants in and to the Common Elements;

C.  The rules, regulations, terms and provisions of the By-Laws of the Association;

D.  The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E.  The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11.  DEFAULT BY SELLER.  If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12.  DEFAULT BY BUYER.  If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are  ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an  increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit.  Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan.  BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13.  RISK OF LOSS.  The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing.  In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16.. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

5

B. Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.      Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER. Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.   ASSIGNMENT AND RECORDATION. BUYER may not assign this Agreement or record or lodge same for public record. Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18. WARRANTIES. The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer. SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein. SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto. SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available. In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities. During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19. LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises. The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20. DELAY IN COMPLETION; EFFECTIVE DELAY.   Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement. In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

7

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.   COMPLETION.   The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction.   The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title.   If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing.   The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed.   SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.   CONSTRUCTION AND CHANGES.   SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect.   The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit.   SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model).   All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale.   Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller.   Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.      COLOR SELECTIONS, EXTRAS AND OPTIONS.   All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.    If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24. GENERAL PROVISIONS.

A. SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B. The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C. The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

9

26.      NOTICES.  All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney.  All notices to SELLER should be forwarded to the address provided for the SELLER.

27.  ENTIRE AGREEMENT.  This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT.  This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30.  MUNICIPAL ASSESSMENTS.  Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER.  Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31.  FURNITURE AND APPLIANCES:  NONE

32.  RECEIPT OF DOCUMENTS.  By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33.  NOTICE OF OFF- SITE CONDITIONS:  Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition.  Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

34. **ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

    **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

    **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

    **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

    **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

    **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. **BUYERS RIGHT TO CANCEL AGREEMENT:** NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

WILDWOOD SQUARE, LLC.
Seller

By: _____
        Thomas DiDonato, Member

WITNESS:

_____

_____
                    Buyer

WITNESS:

_____

_____
                    Buyer

12

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:           WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "BUYER".
   *The words Seller and Buyer include all Sellers and Buyers listed above,*

   1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

   2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

   3.      DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

   4.      PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 25 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

   5. PAYMENT OF PURCHASE PRICE:

The purchase price for the Unit is $369,000.00 payable in the following manner:

| | | |
|---|---|---|
| A. | Initial deposit paid on account | $1,000.00 |
| B. | Deposit paid upon execution of this Agreement to be held by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy Savings Bank, located at 2628 Dune Drive, Avalon, New Jersey 08202 | $35,900.00 |
| C. | Balance due at closing, subject to adjustments and closing costs | $332,100.00 |

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

2

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. <u>TITLE</u>. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. <u>DEFAULT BY SELLER</u>. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. <u>DEFAULT BY BUYER</u>. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are  ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an  increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. <u>RISK OF LOSS</u>. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16.. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B.  Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.       Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans.  This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER.   Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.  <u>ASSIGNMENT AND RECORDATION</u>.  BUYER may not assign this Agreement or record or lodge same for public record.  Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  <u>WARRANTIES</u>.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.   SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein.   SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto.   SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available.  In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement.  This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities.  During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19.  LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20.  DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21. COMPLETION. The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction. The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title. If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing. The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed. SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22. CONSTRUCTION AND CHANGES. SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect. The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit. SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model). All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale. Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23. COLOR SELECTIONS, EXTRAS AND OPTIONS. All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.    If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  <u>GENERAL PROVISIONS</u>.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.   In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.       STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

26.      NOTICES.  All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney.  All notices to SELLER should be forwarded to the address provided for the SELLER.

27.  ENTIRE AGREEMENT.  This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT.  This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY. BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30.  MUNICIPAL ASSESSMENTS.  Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER.  Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31.  FURNITURE AND APPLIANCES:  NONE

32.  RECEIPT OF DOCUMENTS.  By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33.  NOTICE OF OFF- SITE CONDITIONS:  Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition.  Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

**34. ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

A. STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

B. COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

C. NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

D. This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

E. NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED.  SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY.  NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:                    WILDWOOD SQUARE, LLC.
                                            Seller

WITNESS:
                                            By: _____
_____                         Thomas DiDonato, Member

WITNESS:

_____                     _____
                                                       Buyer

WITNESS:

_____                     _____
                                                       Buyer

12



**RE/MAX**
*Renowned Properties®*

*Old Unit 2*

September 9, 2005

Vitaly Korchevsky
1709 Slitting Mill Rd
Glen Mills PA 19342

RE:    Wildwood Square Condominiums Unit# 20
       Wildwood, NJ 08260

Dear Vitaly:

It is with great pleasure that I'm forwarding to you the Agreements of Sale along with Condominium Documents for the new construction at Wildwood Square.

Please review all the documents and return one copy of the Agreement of Sale with your deposit check in the amount of $35,900.00 made payable to Re/Max Avalon-Stone Harbor on or before September 30, 2005. Any questions concerning any of the provided information can be directed to me at any time.

Once all the agreements are received, we will process them and contact you to make selections for cabinets, carpets, tile, and/or any other amenities.

I am looking forward to enjoying this exciting opportunity provided to us by Wildwood Square Condominiums!

Sincerely,

Michael C. Powers, CRB
Broker Associate

CC:    DiDonato Construction
Enc.:  Agreement of Sale (2 copies)
       Condominium Documents

Michael C Powers, CRB
30 Years Experience
#1 RE/MAX in New Jersey 2004
RE/MAX Avalon-Stone Harbor
2109 Dune Drive • Avalon, New Jersey 08202 • Direct: (609) 408-4150 • Fax: (800) 806-1481
Office: (609) 967-4800 • E-Mail: michael@michaelcpowers.com
Each Office Independently Owned and Operated




# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:        WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.       DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.       PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 20 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.      Initial deposit paid on account            $1,000.00

B.      Deposit paid upon execution of this Agreement to be held by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy Savings Bank, located at 2628 Dune Drive, Avalon, New Jersey 08202         $35,900.00

C.      Balance due at closing, subject to adjustments and closing costs

                                $332,100.00

All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.

6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER that SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by the Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

10.  TITLE.  The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates.  SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A.  Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium,

B.  Rights of adjoining owners and tenants in and to the Common Elements;

C.  The rules, regulations, terms and provisions of the By-Laws of the Association;

D.  The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E.  The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11.  DEFAULT BY SELLER.  If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12.  DEFAULT BY BUYER.  If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit.  Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan.  BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13.  RISK OF LOSS.  The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing.  In the event the property suffers damage by

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION:  The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS:  The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16.  RIGHTS RESERVED TO SELLERS.  SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B. Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.  Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans. This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER. Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.  ASSIGNMENT AND RECORDATION.  BUYER may not assign this Agreement or record or lodge same for public record. Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18. WARRANTIES.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer. SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein. SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto. SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available. In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement. This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities. During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19. LANDSCAPING.   No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises.  The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20. DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement.  In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21. COMPLETION. The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction. The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title. If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing. The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed. SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22. CONSTRUCTION AND CHANGES. SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect. The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit. SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model). All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale. Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.     COLOR SELECTIONS, EXTRAS AND OPTIONS.   All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

8

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.     If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections on behalf of the BUYER and complete the Unit.

24.  GENERAL PROVISIONS.

A.  SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing.  In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B.  The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C.  The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

9

26.  NOTICES.  All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney.  All notices to SELLER should be forwarded to the address provided for the SELLER.

27.  ENTIRE AGREEMENT.  This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT.  This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY.  BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30.  MUNICIPAL ASSESSMENTS.  Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER.  Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31.  FURNITURE AND APPLIANCES: NONE.

32.  RECEIPT OF DOCUMENTS.  By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33.  NOTICE OF OFF- SITE CONDITIONS:  Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may effect the value of residential properties in the vicinity of the off-site condition.  Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

**34. ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

   **A.** STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

   **B.** COUNTING THE TIME: you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

   **C.** NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

   **D.** This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

   **E.** NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:

WITNESS:

_____

WITNESS:

_____

WITNESS:

_____

WILDWOOD SQUARE, LLC.
Seller

By: _____
Thomas DiDonato, Member

_____
Buyer

_____
Buyer

12

# AGREEMENT OF SALE

# WILDWOOD SQUARE CONDOMINIUM

THIS AGREEMENT OF SALE is made this 8th day of September, 2005;

BETWEEN:        WILDWOOD SQUARE, LLC, a New Jersey limited liability company, of 434 East Second Avenue, North Wildwood, New Jersey, 08260, referred to as "SELLER;

AND: Vitaly Korchevsky, 1709 Slitting Mill Rd, Glen Mills PA 19342, referred to as "'BUYER".
*The words Seller and Buyer include all Sellers and Buyers listed above,*

1. WILDOOD SQUARE CONDOMINIUMS: SELLER is the owner of lands known as Lot 6.03, Block 184, City of Wildwood, County of Cape May and State of New Jersey; upon which lands SELLER has created a Condominium containing fifty-eight (58) total units.

2. SUBMISSION OF CONDOMINIUM. SELLER has submitted the above described real property, together with the improvements thereon, to the "Condominium Act", Chapter c. 257 of the Laws of 1969, N.J.S.A. 46:8b-l, et seq., which Condominium is to be known as the "WILDWOOD SQUARE CONDOMINIUM".

3.        DELIVERY OF DOCUMENTS: Seller has delivered to Buyer a copy of the Public Offering Statement which document is attached to this Agreement.

4.        PURCHASE AGREEMENT. BUYER agrees to buy and Seller agrees to sell Condominium Unit # 20 in the WILDWOOD SQUARE CONDOMINIUM, together with an undivided 1.77966% interest in the common elements of the WILDWOOD SQUARE CONDOMINIUM to be more specifically defined in me Master Deed and also in the Unit Deed.

5. PAYMENT OF PURCHASE PRICE:

The purchase price for the Unit is $369,000.00 payable in the following manner:

A.    Initial deposit paid on account                        $1,000.00


B.    Deposit paid upon execution of this Agreement to be held
      by Re/Max Avalon-Stone Harbor in an interest bearing account at Sturdy
      Savings Bank, located at 2628 Dune Drive,
      Avalon, New Jersey 08202                          $35,900.00

C.    Balance due at closing, subject to adjustments and closing costs

                                                        $332,100.00


All payments due to be paid by the BUYER to the SELLER shall be made in cash, bank cashier's check or certified check, such checks being accepted subject to collection. All deposits made by BUYER shall be held by Re/Max Avalon-Stone Harbor, Escrow Agent, 2109 Dune Drive, Avalon, New Jersey, 08202, Escrow Agent, in the name of the "WILDWOOD SQUARE CONDOMINIUM Trust Account for WILDWOOD SQUARE CONDOMINIUM Homeowner", in a non-interest bearing trust account for at least the seven (7) day rescission period described below. Thereafter, the deposit shall be held in escrow in an interest bearing trust account by Re/Max Avalon-Stone Harbor until the earlier of the date of closing or at such time as the Agreement is canceled or terminated. All accrued interest, if any, on the deposit money shall be for the benefit of the BUYER.



6. MORTGAGE FINANCING CONTINGENCY: The BUYER agrees THAT THERE IS NO MORTGAGE CONTINGENCY AND THAT BUYER HAS THE ABILITY TO PURCHASE THIS UNIT FOR THE AGREED UPON PRICE.

7. CLOSING.

A. Closing shall occur on or BEFORE December 31, 2006 at Seaboard Title Agency, 2761 Dune Drive, Avalon New Jersey 08202.

B. At closing, possession of the UNIT shall be given to BUYER together with the keys of the Unit. SELLER shall deliver to BUYER the Unit Deed and Affidavit of Title duly executed by SELLER. SELLER agrees to provide and BUYER agrees to accept a Bargain and Sale Deed with Covenants Against Acts of Grantor. Acceptance of this Deed shall constitute acknowledgment by BUYER mat SELLER has faithfully and fully performed its obligations under this Agreement.

8. REAL ESTATE TAXES and WATER and SEWER CHARGES. Estimated real estate taxes and assessments for the taxable year in which title closes, water and sewer charges shall be adjusted as of the date of closing.

9. ADJUSTMENTS AND CLOSING.

A. All adjustments shall be on a per diem basis and shall be made as of the date of closing. The following items shall be adjusted: (I) real estate taxes and other governmental assessments pertaining to the Condominium property which are payable directly by the Unit Owners and not by (he Association; (ii) assessment for common expenses for the month during which closing occurs; (iii) a sum equal to three (3) months condominium fees as a reserve for working capital and emergencies; and (iv) the first year's insurance premiums.

B. SELLER will pay for the drawing of the Deed and SELLER shall pay for realty transfer fees required. All searches, title insurance, survey certification and other conveyancing expenses are to be paid for by BUYER.

3

10. TITLE. The title to be delivered by SELLER to BUYER shall be marketable and insurable by a title company authorized to do business in the State of New Jersey at the standard rates. SELLER shall provide BUYER, at the time of settlement with an Affidavit of Title indicating that title is marketable. Title shall be, however, subject nevertheless without limitation to the following:

A. Conditions, reservations, limitations, covenants, restrictions, easements and agreements now or hereafter of record, providing same does not prohibit use as a residential condominium;

B. Rights of adjoining owners and tenants in and to the Common Elements;

C. The rules, regulations, terms and provisions of the By-Laws of the Association;

D. The conditions, reservations, restrictions, terms and provisions of the Master Deed of the WILDWOOD SQUARE CONDOMINIUM.

E. The rights of telephone, electric and gas, and water utility companies to maintain poles, wires, pipes, mains and cables in the street adjoining the property.

11. DEFAULT BY SELLER. If the title is not marketable and BUYER is unwilling to accept AN unmarketable title, then the deposit monies shall be returned to BUYER, together with expenses of examining the title and survey.

12. DEFAULT BY BUYER. If BUYER defaults in the performance of any obligation under this contract, SELLER shall have the right to end this contract and retain all deposit monies, which are ten percent (10%) of the purchase price plus the cost of extras installed, then on deposit not as liquidated but as agreed damages. By signing this Agreement, Buyer agrees that this amount is a reasonable figure, despite an increase in the real estate market and despite seller's ability to sell the same unit for the same purchase price as set forth herein or a higher purchase price than is set forth herein. Seller further has the right to sue Buyer for additional damages or for failure to perform under this Agreement or for both damages and performance. Buyer acknowledges that Seller is putting itself at substantial monetary risk by performing under this Agreement and Buyer hereby agrees to purchase said unit. Buyer further agrees that the seller is constructing this unit at the buyer's direction and for the benefit of the buyer. Buyer acknowledges that they have received a pre construction price and seller is relying upon this sale to engage in a substantial loan. BUYER agrees not to refuse to perform this contract by reason of terms or provisions of the Master Deed or By-Laws of the WILDWOOD SQUARE CONDOMINIUM, INC.

13. RISK OF LOSS. The risk of loss or damage to the property by fire or otherwise, excepting ordinary wear and tear, is on the SELLER until the closing. In the event the property suffers damage by

4

casualty prior to closing, SELLER shall have the option to repair all such damage, or to terminate and rescind this Agreement whereupon all deposit monies paid by BUYER shall be returned to BUYER, together with costs of BUYER'S title search and survey and thereafter the parties shall have no rights or obligations to one another. In the event that SELLER elects to terminate this Agreement, SELLER shall notify BUYER within thirty (30) days from the date of the casualty loss. In the event that SELLER elects to repair the damage, SELLER shall have the right to postpone closing hereunder for an additional period of one hundred twenty (120) days from the date set forth in the Closing Notification. Should the SELLER not have corrected the damage within the one hundred twenty (120) day extension period then BUYER shall have the option of terminating this Agreement and have all deposit monies plus accrued interest returned in full.

14. POSSESSION: The Buyer may enter into and upon the land and premises and take possession of the Unit upon the delivery of the Deed and closing of title and upon full payment of the balance of the monies due under this Agreement, together with all closing charges.

15. SIGNS: The Buyers for themselves, their heirs and assigns do hereby covenant and agree that for a period of two (2) years after the delivery of the Deed and closing of title or the sale of the last unit, whichever occurs first, they will not place or cause to be placed any sign or signs upon any part of the said premises, advertising the same for sale, rent or lease, or for any other purpose whatsoever, without first obtaining written consent of the SELLER. This paragraph shall survive delivery of the deed and shall not merge therein. Whereas the BUYER and SELLER agree that Seller's remedy at law would be inadequate if BUYER were to violate the terms of this provision, SELLER shall have, in addition, the right to obtain and injunction restraining the BUYER from violating this clause, and shall be entitles to reasonable legal fees thereby incurred.

16. RIGHTS RESERVED TO SELLERS. SELLER has reserved to itself, in the various condominium documents, certain rights which shall survive settlement. Those rights include, but are not limited to the following:

A. SELLER shall have the right at any time to modify the purchase price of other UNITS in the property without in any way affecting the purchase price under this Agreement.

B.  Until such time as SELLER no longer holds any UNIT for sale in the ordinary course of business, SELLER shall have the right to make use of the Common Elements of the Condominium for access and as a sales office.

C.     Prior to the first recorded conveyance of title to a UNIT by Deed from SELLER to any BUYER, SELLER shall have the right, acting pursuant to law, to amend the Master Deed, the Bylaws and the property plans.  This right shall include the right to change the size, layout and specifications of the UNITS, provided that any such change in size, layout, or specifications shall be substantially as set forth in the Condominium documents and no such amendment shall increase the liability and responsibility of BUYER.  Subsequent to the recordation of the Master Deed, any amendment shall be made in the manner provided in the Master Deed and the By-Laws.

17.   ASSIGNMENT AND RECORDATION.  BUYER may not assign this Agreement or record or lodge same for public record.  Any attempts to assign, record or lodge this Agreement for public record shall constitute a default hereunder.

18.  WARRANTIES.  The developer has enrolled the project in the New Jersey Home Buyer's Warranty Corporation and a specimen Limited Warranty-Home Warranty Agreement together with Approved Standards is attached to the Public Offering Statement, a copy of which has been furnished to the Buyer.  SELLER'S sole responsibility shall be limited to the terms and conditions set forth therein.  SELLER makes no further warranties express, general, limited or implied, except as contained in the limited warranty, Home Warranty Agreement referred to above together with the approved standards annexed thereto.  SELLER makes no warranties whatsoever regarding consumer products for which a written manufacturer's warranty is available.  In addition, BUYER acknowledges that he has been advised by SELLER prior to the execution of this Agreement that written manufacturers' warranties for all consumer products included in the dwelling described herein, for which there exists a written manufacturer's warranty, are available for BUYER'S inspection at SELLER'S sales office and that BUYER has been given an opportunity to inspect same prior to the execution of this Agreement.  This clause shall survive closing of title.

SELLER warrants the construction of the common facilities for a period of two (2) years from the date of the completion of each of the common facilities.  During such two (2) year period SELLER

6

warrants that the common facilities are fit for there intended use and SELLER agrees to repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

SELLER warrants for a period of one (1) year following closing of title, subject to normal use and upkeep, that the outbuildings, driveways, walkways, patios, retaining walls and fences, if any, shall be free from defects due to faulty workmanship or materials, and further that the surface drainage is proper and adequate, and further that all off-site improvements constructed by the SELLER are free from defects for a period of one (1) year from the date of its construction, all as required by the Planned Real Estate Development Full Disclosure Act Chapter 419 P.L., 1977, N.J.S.A. 45:22A-21 et seq.

19. LANDSCAPING.  No representation is made by SELLER regarding the condition of trees or any other vegetation or growth on the premises. The SELLER shall not be responsible for the survival of any trees, vegetation, or growth after closing of title.

20. DELAY IN COMPLETION; EFFECTIVE DELAY.  Closing may be postponed in the event of the occurrence of fire or other casualty as specified in Paragraph 13 hereof, or in the event that completion of the Unit is delayed due to inclement weather, strikes, lockouts, or other labor disputes affecting either the SELLER or any of the SELLER'S suppliers of material or labor, delay in issuance of permits or mortgage commitments, acts of war or for any other reason beyond the control of the SELLER. In the event that completion of the Unit is delayed for a period in excess of 120 days from the date set forth herein for closing, then BUYER shall have the right to terminate this Agreement. In the event that BUYER elects to exercise its right to terminate this Agreement, BUYER shall provide SELLER with notification to such intention as soon as practicable, and in any event within thirty (30) days prior to the expiration of the 120 day period.

In the event of such termination, all deposit monies paid hereunder shall be repaid to the BUYER together with accumulated interest thereon and reasonable expenses of examining title and making

survey. BUYER hereby releases SELLER from any and all liability whatsoever arising out of any change in the BUYER'S Mortgage commitment resulting from any delay in completion of the Unit.

21.  COMPLETION.  The issuance of the Certificate of Occupancy by the authorities having jurisdiction shall constitute final completion of all items of construction. The delivery of the Deed and the acceptance of same by the BUYER shall be considered and deemed as an acceptance by the BUYER of the Unit as being in good condition and an acknowledgment that the requirements to be met by the SELLER have been fully complied with by SELLER, unless otherwise agreed in writing by the parties at the closing of title. If the Certificate of Occupancy is not obtained prior to the date herein set for closing, then the time for closing shall automatically be extended until after the Certificate of Occupancy has been obtained, provided that in no event shall the time for closing be extended beyond 120 days of the date herein set for closing. The BUYER will accept conveyance despite the fact that all improvements of the Common Elements and Limited Common Elements and facilities and the construction of the balance of the Units have not been completed. SELLER shall be liable for assessments for municipal improvements completed prior to closing of title.

22.  CONSTRUCTION AND CHANGES.  SELLER and BUYER agree that the SELLER will construct or cause to be constructed the Unit being purchased by the BUYER, similar to the plans of Joseph A. Courter, Jr. Architect. The SELLER, however, reserves the right to substitute materials of equal or better quality than those used in the construction and finishing of a model unit. SELLER shall have the right to make any change in construction found to be necessary in the course of the construction, subject to applicable building codes, and to construct the Unit inverted from left to right (i.e., a mirror image of the model). All furniture, draperies, furnishings, carpeting, mirrors, wallpaper, and all other devices, such as radio and electronic equipment, exhibited in the model unit, except as specifically set forth in this Agreement, are for exhibition purposes only and are not included in this sale. Buyer shall pay for extras or changes, prior to the same being done with payments being made directly to the Seller. Said payments shall be non-refundable except in the event of default by the Seller. Seller may, at Seller's option, elect to have payments made after work is done.

23.     COLOR SELECTIONS, EXTRAS AND OPTIONS.   All selections and options regarding colors or items regarding extras, if offered by SELLER, shall be made,

obtained and/or purchased through the SELLER or its designated subcontractors or suppliers. Choices and selections shall be promptly made by the BUYER within seven (7) working days from SELLER'S request. Said selection shall be made from samples and lists submitted by the SELLER. BUYER agrees to pay for such options, extras and choices of color or kinds of materials within the same time period provided for selection as set forth above.      If BUYER fails to make the selection(s) within seven (7) working days, BUYER shall be deemed to have waived his opportunity to select colors, extras and options and the SELLER may make such selections an behalf of the BUYER and complete the Unit.

24. GENERAL PROVISIONS.

A. SELLER shall not be responsible for any change in color selections after the time at which said color selections are initially made by BUYER in writing. In the event SELLER fails to comply with the subsequent color change, BUYER agrees to be bound by his original color selection.

B. The placement of the dwelling to be erected on the premises herein described shall be in the sole discretion of SELLER, provided said placement is approved by the proper municipal authorities.

C. The BUYER, for himself, his heirs, legal representative and permitted assigns, covenants and agrees that he will not, without the prior written consent of SELLER, its successors or assigns, change, alter, or modify the grade or contour of the premises, as same appears at time of closing of title, dig or cause to be dug any drain or ditch, erect or cause to be erected any fence, wall, or other structure that will in any manner interfere with, affect, alter or modify the flow of surface waters to, through, or from the subject premises conveyed herein.

25.      STATE INSPECTION:  Seller agrees to deliver to Buyer at the time of final settlement current valid certificates of inspection issued by the State of New Jersey, Department of Community Affairs, Division of Housing Inspection, which indicates that each multiple dwelling is a property registered pursuant to P.L. 1987, c 76 of the Laws of the State of New Jersey, that all fees are paid and that the property is in compliance with all regulations in effect.

26.      NOTICES.  All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by certified mail, return receipt requested to BUYER at the address written in this Agreement or to BUYER'S attorney.  All notices to SELLER should be forwarded to the address provided for the SELLER.

27.  ENTIRE AGREEMENT.  This Agreement and Application for Registration constitutes the entire Agreement of the parties and there are no representations, covenants, agreements or warranties made by SELLER in favor of BUYER, unless specifically recited herein.

28.  BINDING EFFECT.  This Agreement shall be binding on the parties hereto and their respective heirs, legal representatives, successors or assigns.

29.  EFFECT OF MASTER DEED, BY-LAWS, RULES AND REGULATIONS, IF ANY.  BUYER agrees to be bound by and comply with the Master Deed By-Laws, Rules and Regulations of the said Condominium and the Association and shall not assert any disapproval of the terms and conditions thereof as a reason or basis for non-compliance with the Agreement.

30. MUNICIPAL ASSESSMENTS.  Any improvements that result in special assessments that are completed before the date of closing will be paid by SELLER.  Any improvement that results in special assessments that are completed after closing will be paid by BUYER.

31. FURNITURE AND APPLIANCES: NONE

32.  RECEIPT OF DOCUMENTS.  By signing this Agreement, BUYER acknowledges that he has received from SELLER, or its agent or representative, a complete copy of the Public Offering Statement.

33. NOTICE OF OFF- SITE CONDITIONS:  Pursuant to the "new Residential Construction off-site Conditions Disclosure Act," P.L. 1995, c253, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition.  Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the

10

value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality.

**34. ATTORNEY REVIEW:** This Agreement of Sale has been prepared by a licensed New Jersey attorney.

A. STUDY BY ATTORNEY: Buyer and Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three (3) day period. This contract will be legally binding at the end of the three (3) day period unless an attorney for the Buyer or Seller reviews and disapproves of the contract.

B. COUNTING THE TIME:· you count the three (3) days from the date of delivery of the singed contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and Seller may agree, in writing, to extend the Three(3) day period for attorney review.

C. NOTICE OF DISAPPROVAL: If an attorney for the Buyer or Seller reviews and disapproves of this contract, the attorney must notify the other party named in the contract within the three(3) day period, otherwise the contract will be legally binding as written. The attorney must send a Notice of Disapproval by certified mail, by telegram or by delivering it in person. Telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery. The attorney may also, but need not to, inform the other party of any suggested revisions in the contract that would make it satisfactory.

D. This Agreement shall not be considered an Offer or an Acceptance until signed by both the Buyer and the Seller.

E. NOTIFICATION OF SETTLEMENT: Once Seller notifies Buyer that the Unit is ready for settlement and that certificates of Occupancy have been issued, Buyer Agrees to proceed to closing within ten days (10) of said notification. Buyer hereby agrees that should he or she not proceed to closing within the ten (10) day period, Buyer will pay a fee of One Hundred dollars ($100.00) per day to the Seller for each day past the said ten (10)day period until the date of settlement.

11

35. BUYERS RIGHT TO CANCEL AGREEMENT: NOTICE TO THE BUYER: YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE SELLER OR ITS ATTORNEY BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THIS AGREEMENT WAS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY, AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY. NOTICES SHALL BE SENT TO WILDWOOD SQUARE, LLC 434 EAST 2ND STREET, NORTH WILDWOOD, NEW JERSEY, 08260

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SIGNED AND AGREED TO BY:                     WILDWOOD SQUARE, LLC.
                                             Seller

WITNESS:
                                             By: _____
_____                     Thomas DiDonato, Member

WITNESS:

_____                _____
                                                      Buyer

WITNESS:

_____                _____
                                                      Buyer

**RE/MAX**
*Renowned Properties*®

*Sent
10/15/05
copy of check*

September 12, 2005

Vitaly Korchevsky
1709 Slitting Mill Rd
Glen Mills PA 19342

RE:     Wildwood Square Condominiums
        Wildwood, NJ 08260

Dear Vitaly:

Please be advised that the unit numbers for the Wildwood Square Condominiums have been
updated to correspond with the condominium documents. Paragraph 31 has also been updated to
specify a complete list of appliances that are included in sale.

Enclosed are two copies of the revised Agreement of Sale reflecting correct unit numbers. Please
review, sign and return one copy and keep a copy for your records.
Please call should you have any questions.

Sincerely,

Michael C. Powers, CRB
Broker Associate

CC:     DiDonato Construction
Enc.:   Agreement of Sale (2 copies)



Michael C Powers, CRB
30 Years Experience
#1 RE/MAX in New Jersey 2004
RE/MAX Avalon-Stone Harbor
2109 Dune Drive • Avalon, New Jersey 08202 • Direct: (609) 408-4150 • Fax: (800) 806-1481
Office: (609) 967-4800 • E-Mail: michael@michaelcpowers.com
Each Office Independently Owned and Operated





